IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HOPE NPIMNEE, and NEBRASKA PRISON CONGRESS,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREWS, Officer of RTC Nebraska Department of Correctional Services; STATE OF NEBRASKA, TAGGART BOYD, and SCOTT FRAKES,<br><br>Defendants. | 8:23CV102<br><br>MEMORANDUM AND ORDER |

Plaintiff Hope Npimnee ("Plaintiff") filed a Complaint on March 15, 2023, in his role as president of Nebraska Prison Congress. Filing No. 1. He has been given leave to proceed in forma pauperis. Filing No. 9. On December 29, 2023, Plaintiff filed a Motion for Status, Filing No. 18, inquiring as to the status of the Court's initial review of his Complaint. Plaintiff's Motion for Status is granted, and the Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

**I. SUMMARY OF COMPLAINT**

Plaintiff purports to bring this action on behalf of Nebraska Prison Congress, of which he is president. In the caption of his Complaint, Plaintiff names Officer Andrews ("Andrews"), Taggart Boyd ("Boyd"), and Scott Frakes ("Frakes") of the Nebraska Department of Correctional Services ("NDCS") as Defendants[1] but alleges in the body of

---

[1] Upon docketing, the State of Nebraska was also included as a defendant in the caption, but upon closer inspection, the Court concludes "State of Nebraska" was only intended as part of the description for Officer Andrews. See Filing No. 1 at 1 (caption lists "Officer Andrews of RTC Nebraska Department of Correctional

the Complaint that "[t]his is a 1983 action against Officer Andrews in her individual and official capacity for discriminatory racism and denying access to the courts." Filing No. 1 at 3.

Plaintiff alleges that while Andrews was performing her "count" duty on March 6, 2023, at the "RTC,"[2] she observed a white sheet over the door window of Plaintiff's room, which "is typically placed over door windows by inmates to indicate privacy for toilet use." Id. at 1. "Officer Andrews gave the directive[,] 'hey, you fucking nigger, you better remove this curtain.'" Id. Plaintiff immediately complied and removed the curtain. Officer Andrews then "filed a formal write-up which directly harms [Plaintiff's] classification in determining whether [he] will be sent to medium or maximum security unit for [his] term of incarceration." Id. at 1, 3. Plaintiff claims, "This write up caused me severe emotional distress, anxiety, and physical pain and suffering as I am now distraught over the outcome of my future via the increased likelihood that I will be put in a more dangerous facility." Id. at 3.

Plaintiff further alleges Andrews denied him access to the courts on or about March 7, 2023, when she denied him a "pen to draft legal documents with notary services to authenticate them and with stamps to mail them in envelopes." Id. (spelling and punctuation corrected). Plaintiff also complains that he is "limited to one hour per week of law library time which is illegal" and "[a]ll inmates by prison policy are denied attorney phone calls for the first 3-4 weeks upon arrival." Id.

---

Services of State of Nebraska") (emphasis added). Accordingly, the Court will direct the Clerk of the Court to update the caption to reflect that the State of Nebraska is not a defendant.

[2] The Court understands the "RTC" to be the Reception and Treatment Center, one of the NDCS facilities.

As relief, Plaintiff seeks $100,000,000.00 in damages and "for Andrews to be discharged from her official duty." *Id*.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

### A. Plaintiff Cannot Represent Nebraska Prison Congress

Plaintiff purports to bring this action on behalf of Nebraska Prison Congress, of which he is the president. Though it is unclear exactly what kind of organization Nebraska Prison Congress is, Plaintiff is not a licensed attorney and cannot represent Nebraska Prison Congress or any other entity or person in court. *C.H. by & through Hunt v. Pattonville Sch. Dist.*, No. 4:21-CV-00443-JCH, 2021 WL 4061106, at *2 (E.D. Mo. Sept. 7, 2021) ("A non-attorney pro se litigant may represent him or herself in federal court, but cannot represent another person."); *Jackson v. Dayton*, No. 15-CV-4429 (WMW/JJK), 2016 WL 2931616, at *1 (D. Minn. Mar. 22, 2016), *report and recommendation adopted*, No. 15-CV-4429 (WMW/JSM), 2016 WL 2930913 (D. Minn. May 19, 2016) ("'pro se litigants can never represent the rights, claims and interests of other parties in a class action lawsuit (or otherwise)'" (quoting *Perkins v. Holder*, No. 13–CV–2874 (PAM/FLN), 2014 WL 755378, at *5 n. 8 (D.Minn. Feb. 26, 2014))); *United States v. Brenton*, No. 8:04CR262, 2007 WL 3124539, at *1 (D. Neb. Oct. 23, 2007) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1333, at 513 & n.15 (2004)) (it is improper for a

4

non-lawyer to sign papers in place of, or to otherwise represent, parties other than themselves).

Accordingly, Nebraska Prison Congress will be removed as a plaintiff to this action, and the Court will consider the claims raised in the Complaint as Plaintiff's alone.

**B. Boyd and Frakes**

While Plaintiff names Boyd and Frakes as Defendants in this matter, he makes no allegations against either of them in the body of his Complaint. He does not allege that either of them are personally involved in the alleged constitutional violations. As a result, Plaintiff has failed to state a claim upon which relief can be granted against either of these Defendants. See *Krych v. Hvass*, 83 Fed.Appx. 854, 855 (8th Cir. 2003) (holding court properly dismissed claims against defendants where pro se complaint was silent as to the defendants except for their names appearing in the caption).

**C. Andrews**

Liberally construed, Plaintiff sues Andrews in her official and individual capacity for damages for alleged violations of his rights under the First and Fourteenth Amendments to be free from discrimination, to due process, and to access the courts. Plaintiff's Complaint, however, fails to allege a plausible claim for relief against Andrews.

1. *Sovereign Immunity*

Plaintiff's claims for damages against Andrews in her official capacity are barred by sovereign immunity. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In addition, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official

5

capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 447; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Thus, the Eleventh Amendment bars Plaintiff's claim for damages against Andrews in her official capacity.

Sovereign immunity does not, however, bar claims brought pursuant to 42 U.S.C. §1983 that seek prospective injunctive relief from state employee defendants acting in their official capacity. Liberally construed, Plaintiff seeks prospective injunctive relief in the form of Andrews' discharge from her employment, but the Court lacks authority to terminate Andrews' employment with the NDCS. "Courts do not have authority to terminate the employment of individual Defendants." *Johnson v. MCF - St. Cloud*, No. CV 22-1299 (JRT/BRT), 2022 WL 17723807, at *6 (D. Minn. Nov. 10, 2022), *report and recommendation adopted sub nom. Johnson v. MCF-St. Cloud*, No. CV 22-1299 (JRT/LIB), 2022 WL 17721510 (D. Minn. Dec. 15, 2022) (citing *Kendrick v. Faust*, No. 1:07CV00025JMMBD, 2009 WL 1972249, at *2 (E.D. Ark. July 8, 2009) ("Finally, several of Plaintiff's requests, including the termination of certain Defendants' employment from the ADC, are matters to be decided by prison personnel, not the courts."); *Nicholas v. Heffner*, 228 F. App'x 139, 141 (3rd Cir. 2007) ("The remaining relief requested is not available as the District Court lacks authority to order . . . the termination of [the defendants'] employment."); *Theriot v. Woods*, No. 2:09-CV-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering

6

the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" as the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]")). Accordingly, Plaintiff is not entitled to the injunctive relief he seeks.

### 2. Discriminatory Comment Not Actionable

Turning to Plaintiff's individual-capacity claims against Andrews, he first alleges a § 1983 claim against Andrews for "discriminatory racism" based on Andrews' directive to Plaintiff to remove his window covering in which she called Plaintiff a racial slur. However, these allegations do not state a claim upon which relief may be granted under § 1983 as Andrews' derogatory comment does not rise to the level of a constitutional violation. *See Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Verbal abuse is normally not a constitutional violation."); *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.") (quotation marks and citation omitted); *Franks v. Fridley*, No. CIV.A. 13-0561-WS-N, 2014 WL 3540574, at *5 (S.D. Ala. July 17, 2014) ("Inappropriate, derogatory, demeaning, profane, threatening or abusive comments made by a correctional official to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation.") (collecting cases); *Kalmio v. Mettler*, No. 4:13-CV-083, 2013 WL 4478691, at *2 (D.N.D. Aug. 20, 2013) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (quotation marks and citations omitted).

### 3. Disciplinary Write-Up

Liberally construed, Plaintiff appears to allege a due process claim based on Andrews' formal disciplinary write-up against Plaintiff which he claims "directly harms [his] classification in determining whether [he] will be sent to medium or maximum security unit for [his] term of incarceration." Filing No. 1 at 1, 3. To prevail on this due process claim, Plaintiff must establish that he was deprived of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). To show he was deprived of a protected liberty interest, Plaintiff must identify conditions that impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id*. at 484.

Here, Plaintiff does not allege any facts about what, if any, discipline was imposed upon him as a result of Andrews' write-up. Thus, nothing in the Complaint suggests Plaintiff was subjected to an atypical and significant hardship that would give rise to a protected liberty interest. Temporary suspensions of privileges and even placement in segregation without cause are not themselves atypical or significant hardships. *See, e.g.*, *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (finding denial of visitation, exercise privileges, and religious services during 37-day segregation did not give rise to a protected liberty interest); *Kennedy v. Blankenship*, 100 F.3d 640, 642–43 (8th Cir. 1996) (holding that 30 days in punitive segregation, which included the suspension of mail, telephone, visitation, and commissary privileges, was not an atypical and significant hardship under *Sandin*).

Moreover, to the extent Plaintiff complains that Andrews' write-up potentially harms his future classification level, such allegations fail to state a plausible claim for relief under

§ 1983.  Prisoners do not have a constitutional right to a particular classification.  *Sanders v. Norris*, 153 F. App'x 403, 404 (8th Cir. 2005) (unpublished per curiam) (citing *Hartsfield v. Dep't of Corr.*, 107 Fed.Appx. 695, 696 (8th Cir. 2003) (unpublished per curiam) (no liberty interests in particular classification)); *see also Dusch v. Rivera*, No. 2:15-CV-00079-KGB, 2016 WL 1698294, at *2 (E.D. Ark. Apr. 27, 2016) ("[E]ven prisoner classifications based on incorrect or erroneous information do not violate due process because an inmate does not have a protected liberty interest in any particular classification.") (citing cases).

Finally, even if Plaintiff had sufficiently alleged a protected liberty interest, the Complaint fails to set forth sufficient facts to allege a procedural due process claim. Specifically, Plaintiff alleges no facts to show that he was denied the minimal procedural requirements that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest.  *Wolff v. McDonnell*, 418 U.S. 539, 556–72 (1974).  These safeguards are (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so.  *Id*. at 563–66.

Accordingly, to the extent Plaintiff seeks to assert a due process claim based on Andrews' formal disciplinary write-up, he fails to state a claim upon which relief may be granted.

9

*4. Access to Courts*

Finally, Plaintiff alleges Andrews violated his right to access the courts when she denied him legal supplies. Liberally construed, Plaintiff also alleges the NDCS policies limiting him to one hour per week of law library time and denying inmates attorney phone calls for the first three to four weeks upon arrival violate his right to access the courts. It is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To prevail on an access to courts claim, a prisoner must establish that he sustained "an actual injury." *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001). To demonstrate "actual injury," the prisoner must show "'that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id*. (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)). "[A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (internal quotation marks omitted).

Here, Plaintiff alleges no facts to suggest he sustained any actual injury as a result of Andrews' denial of legal supplies on March 7, 2023. Indeed his filing of the present Complaint on March 15, 2023, does not suggest that he was prevented from presenting any nonfrivolous claim to the courts as a result of Andrews' conduct. Nor does Plaintiff allege that he suffered any actual injury as a result of the one-hour time limit on his law library access, particularly where access to a law library is not necessarily required to provide meaningful access to the courts. See *Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007) (concluding that providing a law library is merely one way to comply with right of meaningful access to the courts). Plaintiff also does not allege that he suffered an

10

actual injury as a result of the NDCS policy denying inmates attorney phone calls upon arrival to NDCS custody. Even if the Court were to assume injury from such a policy, Plaintiff has not alleged any facts to show that any of the named Defendants had any personal involvement with implementation or application of the policy. Thus, Plaintiff's Complaint fails to state a plausible access-to-courts claim upon which relief may be granted, but Plaintiff will be given leave to amend as set forth below.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief and is, therefore, subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2). On the Court's own motion, Plaintiff will be given 30 days in which to file an amended complaint that states a plausible claim for relief against Defendants and clearly explains what Defendants did to him, when Defendants did it, and how Defendants' actions harmed Plaintiff. Plaintiff is advised that any amended complaint he files will supersede his original Complaint. Plaintiff may use the court-approved form to draft his amended complaint, which the Clerk of the Court will provide to him.

IT IS THEREFORE ORDERED that:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.

Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files an amended complaint.

4. The Clerk of the Court is directed to send to Plaintiff a form civil complaint (prisoner).

5. The Clerk of the Court is directed to update the caption to:

   a. remove "Nebraska Prison Congress" as a plaintiff in this case,

   b. remove "State of Nebraska" as a defendant, and

   c. amend the description for Defendant Andrews to read "Officer of RTC Nebraska Department of Correctional Services of State of Nebraska."

6. The Clerk of Court is directed to set a pro se case management deadline using the following text: **August 21, 2024**: amended complaint due.

7. Plaintiff's Motion for Status, Filing No. 18, is granted consistent with this Memorandum and Order.

Dated this 22nd day of July, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

12